The next case that is listed for oral argument is Zaloga v. Borough of Moosic. Zaloga v. Borough of Moosic Good morning, Your Honors. This issue is fairly simple. We present two questions for review as to whether the law was clearly established under the First Amendment. Remind me, if you would, Judge Brand dismissed most of the counts in this case, did he not? Correct, Your Honor. So what remained then, this First Amendment? Yes, Your Honor. What remains is basically 1% of the case. The claim that remains is that borough council member Mercatilli pressured prison board commissioners for the county to deny the plaintiffs' renewal of their prison contract. So we start out with the fact that what figures factually are two completely separate municipal entities under Pennsylvania law. Correct, Your Honor. Political subdivisions, and in particular, the county acting through or not acting a board that is part of county government. Correct, Your Honor. And so I think you've hit the issues right on the head. First is, can an attempt to get another government entity to retaliate be actionable under the First Amendment? Well, and the fact that you need to add to this is that Zaloga is challenging this as retaliation. Zaloga spoke out against Mercatilli, and then Mercatilli was unhappy with that and told the three members of the prison board he'd withdraw support of them if they voted to renew the contract. So we have a lot more actors than just Mercatilli doing something back against Zaloga as such. Correct, Your Honor. Judge Sheridan, did you have a question? I do. I want to speak to the McLaughlin standard, McLaughlin v. Watson, where the court seemed to indicate that even if it is sort of cross borders on the government entities, that a third party's actions, if it's the language, defendant must threaten or coerce the third party to act. Are the threats here of political retribution, which were evidently being made, or we have to accept that they were being made at this stage by Mr. Mercatilli toward other elected officials, not coercive and threatening sufficient to bring this under McLaughlin? Correct, Your Honor, and the key case there is R.C. Maxwell, which is reaffirmed in McLaughlin. In R.C. Maxwell, you had a municipality that threatened to take adverse action against Citibank unless they revoked a lease based upon the plaintiff's billboards. Basically, they said, Citibank, take down the plaintiff's billboards, or we're going to pass a zoning ordinance, essentially push your business entity out of our municipality, or we're going to take legal action against you, civil legal action. And this court in R.C. Maxwell said that those threats were not sufficiently coercive. We also said in McLaughlin, and I guess this would be part of the test, in addition to the threaten or coerce language that Judge Jordan has referred to, we also said the defendant's conduct must be of a particularly virulent character. That's correct, Your Honor. And in this case, you're talking about a person who's a borough council member, but also a citizen with his own speech rights, talking about his own political support, right? He doesn't have to support someone that supports Dr. Salogo. Exactly. Mr. Mercatilli had his own First Amendment rights here. What do we have out there, or I should say, what does there exist in the nature of clearly established constitutional law with respect to someone, and I certainly don't mean to demean the borough of Moosic, but this is a small borough in Lackawanna County, I believe, right? They would admit us such, Your Honor. Well, I grew up in a town of 7,000, so I know a little bit about how these things operate. The councilman certainly was not a full-time councilman. He had his views. He was offended. He said something. To what extent do Supreme Court precedents cover a situation like this, address such a situation like this, so that we should say that the right that was at stake here was clearly established? None, other than to just purely establish a retaliation standard. There are circuits that have addressed this. What about the way Judge Brand actually defined the right at stake? I mean, our cases in the Supreme Court have suggested, not necessarily narrowly, but that there has to be a rather non-abstract way of defining what the right is here. What did he define the right as? Your Honor, Judge Brand looked at how the right was defined by this court in McLaughlin and the Fourth Circuit case that this court cited Suarez. Was it sufficiently specific? That's the question. Did Judge Brand define the right on the scale of abstraction? Was he concrete enough, specific enough in how he defined it? We don't believe so. Suarez specifically refused to address this issue. The Fourth Circuit said, hey, because this isn't sufficiently coercive activity, we're not going to decide whether pressure on a third party could ever be retaliatory because you're not the decision maker in that context. Isn't the real answer that Judge Brand really didn't define the right? Correct, Your Honor. I believe that is the case, and not in a way that addresses either of the two issues before this court. First, whether the action is sufficiently retaliatory. McLaughlin and R.C. Maxwell would say no. So would Suarez from the Fourth Circuit. The Fourth Circuit talked about threatened legal action against the Better Business Bureau unless they revoked a corporation's status. Is the action here that Mercatilli threatened, is it the kind of governmental regulation or action that is retaliatory? He was threatening to use his First Amendment right to withdraw support from these other people. Political support. Yeah, political support, which would seem to be, you know, something that's a different character than somebody's going to bring a lawsuit against a LOGA. Correct, Your Honor. It is not. And the courts, the circuits, not just this circuit, but the other circuits that have looked at this question say for it to be retaliatory, you need the power of the state. You need to be threatening state coercion, hammerhead by the Second Circuit, the Eleventh Circuit. The Tenth Circuit has looked at this question, and they agree with this court's decision and R.C. Maxwell that you need some threat of the power of the state against the plaintiff. And there's that, the borough of Mooson and Mercatilli here are bound in terms of the powers of that municipality by Pennsylvania's borough code, right? Correct, Your Honor. So, I mean, and to the extent I remember the borough code, there's nothing to suggest any kind of power or authority that borough can have over a county prison board. Correct, Your Honor. That matter over the county commissioners or the governing body of the county itself. And the prison board members in this case unanimously renewed the contract. As you said, as a matter of fact, I'm glad you mentioned that. You talk about that in your briefing, but there's, how do we know that? I mean, how do we know that is a fact other than your assertion that this was a unanimous thing? Your Honor, this was in our statement of material facts for summary judgment below. This is an appeal from Dallas summary judgment, not a motion to dismiss. And that statement and that fact was conceded by the plaintiff. If I could. Appendix 174 to 176A, I believe the District Attorney Jarbola, who's one of the prison board members, put in his affidavit that the plaintiffs provided that the prison board unanimously renewed the contract. Essentially that they didn't buck under pressure, which again, that's one of the two major legal issues here. Nor is there a suggestion in the red brief that it was not contrary to your assertion. Correct, Your Honor. And in these cases, you know, in the middle district of Pennsylvania, you provide your statement of material facts in support of summary judgment, we did. And then the burden then goes to the plaintiff to deny that a burden. Well, that's an interesting thing. Is it your position that if a person does everything they can to coerce and threaten, but they just can't pull it off, that that couldn't, as a matter of law, be the sort of thing that would be threatening and coercive? Clearly, if Mr. Mercantile was trying to be threatening and coercive, he was unsuccessful because the contract was unanimously approved. But are you hanging your hat on the fact that it was unanimously approved, that he failed in his attempt? We're hanging our hat on the fact that it's not clearly established. But secondarily, we would say there's no constitutional violation for that reason. This court hasn't addressed the question.  It absolutely does, Your Honor. What he was threatened, as Judge Rendell has characterized it, was to withhold his political support. Any voter has the right to do that, to vote for or against anyone they please, for whatever reason, in fact, in that case, whatever virulent character may animate the person's voting behavior. Correct. And the Fifth Circuit looked at this identical issue in Colson. In that case, you had someone that was running for DA, or actually DA running for retention, and in the Fifth Circuit, a politician said, I will give you 1,800 votes if you secure an indictment from the grand jury. And the Fifth Circuit said that promise of votes, or threat to not give you those votes, isn't sufficiently retaliatory. And that's not a threat, that's not a government coercion. I believe this case falls exactly in line with Colson. And in Colson, the Fifth Circuit said that this isn't clearly established as well. So the Colson court also addressed the qualified immunity question before this court. And there simply just is not any clearly established authority that, one, failed pressure on a third party could be retaliation, or, two, that a threat that's not of government power could be actionable retaliation. Those are the two questions. Neither of them has been decided by this court. I take that back. The second question has been decided in R.C. Maxwell. This court says it has to be a threat of government power. The first question this court has not yet addressed, whether a failed threat could be retaliatory. The other circuits that have addressed the question have said it could not be, that the third party actually has to retaliate in such circumstances. I see that my time has expired. Thank you, Your Honor. We'll have you back for rebuttal, Mr. Autry. Mr. Healy. Mr. Healy, what was it about Mr. Mercatilli's behavior or conversations with county officials that was of a particularly virulent character? Good morning, Your Honor, if I could introduce myself. My name is Joseph Healy, and I represent the Plaintiff Appellee's Doctors of Logo and Correctional Care. Welcome, Mr. Healy. And what was particularly virulent was that Mr. Mercatilli, with a position as Borough Council President for 32 years, who himself in his deposition said, I've helped a lot of people and that I am a policymaker, and by virtue of that going to three members of the prison board, which by virtue of his prominence as the Music Borough Council, and Judge Smith, you said yourself it is a small community, and I once sat on a prison board, which was one of my finest hours. Well, you seem to be emphasizing that he was a prominent person, but how is this the exercise of government authority? I mean, this man, Mr. Mercatilli, he's got his own First Amendment rights, doesn't he? He does. The fact that he was elected and reelected and reelected somehow in his small community doesn't mean he's stripped of the power to go around to people and say, I don't like Mr. Zaluga, and I don't like his business, and I don't like how he conducts himself, and I don't want him to get the contract. And if you say he is going to get the contract, don't expect me to be helping you when you're up running for sheriff or DA again. How is that not just the right of any citizen to go and say, I don't like this person, I don't want you supporting him, and if you do support him, I won't be supporting you? Why isn't that just straight-up First Amendment rights of Mr. Mercatilli? And Judge Shorten, that's an excellent question. I thought so. I thought so too. By virtue of the fact that he has been Music Borough President for 32 years, by virtue of the fact that he says, I'm not sure I understand. What does that have to do with it? What case clearly establishes, what case should have put him on notice, I can't do this. It's a violation of the constitutional rights of others. What we are talking about is what is clearly established. Exactly, and I'm wondering what case said he should have known, oh my goodness, the Supreme Court has said an X. If we are looking at what is clearly established law, the right against First Amendment retaliation, I do not believe that there is any more clearly established law than that. That's at a level of abstraction, way at the top. That's like saying, motherhood and apple pie is good. And isn't that almost the way Judge Brand defined the right that was at stake? He did. Judge Brand relied upon Judge Munley. Judge Brand relied upon the Mitchell case. So, yes, that is the key. Is the First Amendment right against retaliation clearly established? No, that isn't the key. The question is, is saying there's a First Amendment right against retaliation sufficiently specific for that to be a sound ground on which the district court could have said, Mr. Mercatilli was on notice, that he couldn't do this. The Supreme Court said rightly, the right question is not the general right to be free from retaliation for one speech, but the more specific right to be free from, and then it went into the specifics of that case. It seems like the Supreme Court is saying, you can't say what Judge Brand said and let that be enough. It has to be particularized in some sense so that the contours of the right are clear to any reasonable official, correct? And what I would say in response to that, Judge, is we are addressing a two-pronged question under Saucere v. Katz. The first question is, and we know this from Mitchell, was it a clearly established law to a reasonable official? I would submit to you that Judge Brand and the Third Circuit has said that that is a clearly established law. What is? What's clearly established? The First Amendment right. What does that get us here? I mean, again, you are at such a high level of abstraction that it doesn't match up with the facts that are at stake here. Let me ask you this hypothetical. Certainly. What if John Smith, who is a township supervisor for a township within Lackawanna County, of a population smaller than the borough of Moosick, and who has not been offended or had anything said about him by Zaloga of any negative nature whatsoever, but Smith happens to know that Zaloga made these comments about Mercatilli, doesn't like it, and goes to those same members of the prison board and says, this wasn't right. This was unfair. Don't renew this contract. Is John Smith looking at the same kind of liability under the First Amendment that Mercatilli is looking at? They are both officers of subdivisions under Pennsylvania law, and they're in the same county, subject to the same county, similar county constituencies. And Judge Smith, I believe, on the same day, in the same set of circumstances, that arguably John Smith may be correct. But this is something different. Well, I know there's a factual distinction, but what difference does it make? Mr. Mercatilli said himself he believed Dr. Zaloga to be a liar. Mr. Mercatilli said, I don't like this gentleman. I don't like what he does. And on the flip side, when the contract was renewed, he went back to Mr. Jarbola and said, I didn't like what you did. The question goes to motive. Why did Mr. Mercatilli say what he did? No, it really doesn't. It really doesn't go to motive. It goes to the fact that the courts are willing to protect someone like Zaloga or Mercatilli and his right to speak out and express his view unless what he's done is coercive or virulent. And, you know, so when we need to find clearly established law that says something other than that, and you're not helping us there. Yeah. I'll go back and ask you again. Do you have something that indicates that naming the right at the level of generality that the district court did here is okay? I've given you the language from Reichle, I can give you other language from the Supreme Court, but they've said again and again that for it to be clearly established, the right has to be not stated as a broad general proposition, but that the contours have to be particularized. That's the Supreme Court statement. What is particular about you can't retaliate? And I believe, Your Honor, that we are talking in the context about particularized, we're talking about the Fourth Amendment. In the Fourth Amendment, the right against unreasonable search and seizures, which has exceptions. Here we are talking about the First Amendment right against retaliation. And that, as best as I can tell, Third Circuit and the Middle District has said this is a clearly established right. And then when we go to the Fourth Circuit. What is a clearly established right here? That's the inquiry we're trying to get to. We're trying to make progress on that. Exactly, Your Honor. The clearly established right is the right against First Amendment retaliation. Okay. I guess we're just going back to that. We're going back. Maybe it would help to ask this. The Supreme Court has also said that for something to be clearly established, it has to have been said in some kind of precedent in a way that puts it beyond debate. Nobody could reasonably debate it. It ensures that officials, this is from Reichle again, can reasonably anticipate when their conduct may give rise to liability for damages. So it's got to be, quote, beyond debate. Every reasonable official would know it. Is it the fact? Is there something in the district court's opinion that would give us comfort that it's beyond debate that somebody who happens to hold a position, a political position in a different local government, cannot express a political viewpoint and even threaten political retaliation? Is there something that gives us the comfort that that is so clearly established, it's beyond debate, that Mercantile should have known that? And I believe, Your Honor, that Judge Brand has told us this is a clearly established right. Judge Munley has told us this is a clearly established right. Well, that's why we have an appellate process. I understand that. But they have to rely on some other precedent for that that establishes it. They can't do it. Yeah, yeah. We're on appeal. They can't do it Ipsy Dixie. Exactly. Okay. And the answer to my question is, or the answer to the question is, yes, I believe it is clearly established by virtue. If you're asking for a case, I believe Anderson v. Davila tells us that in the last paragraph. Mr. Healy, given the repetitive questions that my colleagues and I have asked, is there anywhere else you'd like to go in this argument? Are there any other points that you'd like to make? The only points I would like to make is we have a two-pronged test. The case which is relied upon is Mitchell. Mitchell was something quite different than that which we are confronted with here. And that was the court deciding a purely objective legal question. What Judge Brand has suggested and what I am suggesting is, if we use the first prong of the Saussure v. Katz test, there is a question of fact here. Well, I thought we had said and said more than once that whether something is clearly established in the law or not is a purely legal question, right? It is. I agree. Okay. And you've got to win on both prongs of Saussure v. Katz. So even if one were to accept there might be a fact question out there somehow about whether there was a constitutional violation, the question about whether the constitutional issue was clearly established, the constitutional principle was clearly established, that's plainly a question of law, right? It is. And we have jurisdiction to decide it, correct? You do, Your Honor. Okay. And the position that I take on behalf of Dr. Zaloga is that the issue of clearly established law has been established. Because of what the district court said. That's correct, Your Honor. Okay. Gotcha. Anything else, sir? No, Your Honor. Thank you. Mr. Gottfried, do you wish rebuttal? In follow-up to a question posed to me when I was up here before as to where in the record it shows that the decision was unanimous, in our statement of material facts, which is Appendix 126A, Paragraph 153, we aver that in the plaintiff's response, they admit that fact, which is 169, or actually that's 153A in the appendix, so 126 and 153A. Briefly, on the point that the qualified immunity law only requires a particularized standard in the Fourth Amendment context, I believe the plaintiff is mistaken. The Supreme Court has, in the last four years, reversed circuit six times on the question of qualified immunity when it's been denied. Two of those six cases were First Amendment cases, one of which was this court's case in Carroll or Lane, and the other was Reichel, which was from the Eleventh Circuit, I believe. The Lane case was unanimous, and that was a retaliation case. And that was a situation where an employee was retaliated against for speaking in a deposition, and the Supreme Court said, well, the employee had a right to speak in the deposition, but that wasn't clearly established that the employee had a right to do that, and so the employer was granted qualified immunity by the Supreme Court on a vote of 9-0. Reichel, also a retaliation case, was an issue of whether you could have retaliation when there's probable cause to arrest, and the Supreme Court reversed on a vote of 6-2 when one justice not participating. The two judges that did not join the majority concurred in the judgment nonetheless and just didn't reach the qualified immunity question. This is not an issue that the Supreme Court is taking lightly. In the last six cases that they've reversed circuit courts, three of them have been unanimous, and it has not been an issue of controversy. The Supreme Court is saying, and saying repeatedly, that the question needs to be defined so that not only is there a standard out there, but the official would know that their conduct violates the standard. Thank you, Your Honors. Thank you very much, Mr. Godfrey. Mr. Healy, we appreciate your arguments, and we'll take the case under advisory.